**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

| | |
|---|---|
| DIANA GALICIA CONTRERAS,<br><br>*Petitioner*,<br><br>v.<br><br>MARKWAYNE MULLIN, *et al.*,<br><br>*Respondents.* | Case No. 26-cv-2316-ABA |

# MEMORANDUM OPINION

Pending before the Court is Petitioner Diana Galicia Contreras's (hereinafter, "Petitioner's") Petition for Writ of Habeas Corpus. ECF No. 1. Petitioner requests that the Court enjoin Respondents Secretary of Homeland Security Markwayne Mullin, Acting ICE Director David Venturella, ICE Field Office Director Robert Guadian,[1] and Attorney General Todd Blanche (hereinafter, "Respondents") from removing her to Mexico without certain procedural protections, including Immigration Judge ("IJ") review of a negative fear determination. *Id.* ¶ 95. Respondents argue that Petitioner fails to state a claim on which relief can be granted, that ICE has lawful authority to detain and remove Petitioner, that there is a significant likelihood of her removal in the reasonably foreseeable future, and that she is not entitled to IJ review of the denial of a third-country screening, and incorporate prior arguments raised in similar cases. ECF No. 16 at 2–4. For the reasons below, the Court will grant the Petition.

[1] Pursuant to Federal Rule of Civil Procedure 25(d), a government official serving in their official capacity is automatically substituted as a party. Robert Guadian is the Field Office Director of the Washington, D.C. ICE Field Office, making him the new head of the Baltimore sub-office.

## I. BACKGROUND

Petitioner Diana Galicia Contreras is a native and citizen of El Salvador. ECF No. 1 ¶ 35. On March 29, 2023, she was granted withholding of removal to El Salvador under the Convention Against Torture (CAT) by an IJ. *Id.* ¶ 37. She has since lived in Maryland under an Order of Supervision (OSUP) and has two U.S. citizen children. *Id.* ¶¶ 36–38. She has abided by the requirements of her OSUP, has not been convicted of any crimes, and received employment authorization. *Id.* ¶¶ 39–40, 42.

On June 9, 2026, Petitioner was detained by ICE at a scheduled check-in, and her OSUP was revoked. *Id.* ¶ 41. She was informed that she would be removed to Mexico and immediately requested a fear interview. *Id.* ¶ 44. The next day, on June 10, 2026, she was released from ICE custody with a GPS ankle monitor while Respondents continued to seek her removal to Mexico. ECF No. 6 ¶ 2–3. On July 21, 2026, Petitioner received her fear interview, and a USCIS asylum officer determined that she did not have a reasonable fear of persecution or torture if removed to Mexico. ECF No. 13 ¶ 1; ECF No. 13-1 (Third Country Screening Notice).

Petitioner filed the instant Petition for Writ of Habeas Corpus on June 9, 2026, the same day that she was detained. ECF No. 1. After she was released from custody the following day, the parties filed a Joint Status Report informing the Court of her release. ECF No. 6. The parties both recognized that her release by ICE mooted her detention-related claims and requested that the Court stay briefing pending the results of a third-country fear screening. *Id.* ¶¶ 2, 5.

Petitioner's fear screening as to Mexico took place on July 21, 2026. Petitioner received the results on August 4. The form in its entirety (other than identifying information) read as follows:

> You were interviewed by a DHS asylum officer to determine whether it is more likely than not that you will be tortured in **Mexico**. The assessment made by the DHS asylum officer, indicated below, will be considered by DHS in determining whether you may be sent to **Mexico**. DHS will provide you with additional information regarding how you will be processed.
>
> . . .
>
> You did not establish that it is more likely than not that you will be persecuted or tortured in Mexico.

ECF No. 13-1.

On August 19, 2026, Respondents filed their Response to the Petition. ECF No. 16. On August 21, 2026, Petitioner filed her Reply, reasserting only her challenge to the process provided under DHS's March 30, 2025 Guidance Memorandum for third-country removals. ECF No. 17 at 2.[2]

## II. DISCUSSION

### a. Jurisdiction

Under 28 U.S.C. § 2241, a district court may grant a writ of habeas corpus if a prisoner is "*in custody* in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3) (emphasis added).

An individual is "in custody" for habeas purposes when she "is subject to restraints 'not shared by the public generally,'" and has "the obligation to appear at all times and places as ordered." *Hensley v. Mun. Ct., San Jose Milpitas Jud. Dist.*, 411 U.S. 345, 351 (1973) (citing *Jones v. Cunningham*, 371 U.S. 236, 240 (1963) (cleaned up)).

[2] In her Reply, Petitioner describes her claim as a "facial challenge" to the process provided by DHS's March 30, 2025 Guidance Memorandum and the one-page Third Country Screening Notice. ECF No. 17 at 2. Her Petition, however, only asserts this claim as to herself. ECF No. 1 ¶¶ 57–59. Accordingly, the Court declines to address this claim as a facial challenge, and will construe it to constitute an as-applied claim.

Although detention is the archetype of custody, an individual may be found to be in "custody" for purposes of establishing habeas jurisdiction when conditions "significantly restrain petitioner's liberty to do those things which in this country free men are entitled to do." *Jones*, 371 U.S. at 243. A final order of removal is sufficient to establish custody for the purposes of § 2241, particularly when accompanied by a demonstration of the government's intent to execute the removal order. *Asemani v. Director, Office of Detention & Removal, Dept. Homeland Sec., Immigr. & Customs Enf't.*, 2026 WL 810922, at *1 (4th Cir. Mar. 24, 2026); *see also Rosales v. Bureau of Immigr. & Customs Enf't*, 426 F.3d 733, 735 (5th Cir. 2005) ("A final deportation order subjects an alien to a restraint on liberty sufficient to place the alien 'in custody.'").

The Petitioner here is subject to a final order of removal and a GPS ankle monitor, and Respondents have established their intention to remove her to a third country, Mexico. For the purposes of § 2241, she is in custody, and this Court has jurisdiction to review her claims.

**b. Due Process Required for Third-Country Removals**

Petitioner's remaining claim alleges that she has not been provided with the due process safeguards necessary before removal to a third country, specifically, review by an immigration judge of the negative fear determination made by the DHS asylum officer. ECF No. 1 ¶¶ 57–59; ECF No. 17 at 2. As Respondents acknowledged, "the factual . . . and legal arguments presented in the instant habeas petition do not materially differ from those presented in *Cruz Medina v. Noem*, 794 F. Supp. 3d 365, 379 (D. Md. 2025)" (hereinafter, "*Cruz Medina I*"). ECF No. 16 at 2. The legal claims here are analogous to the Court's decision in *Cruz Medina v. Noem*, 806 F. Supp. 3d 536

(D. Md. 2025) (hereinafter, "*Cruz Medina II*"), and the Court hereby adopts the reasoning therein.

To the extent Respondents intend to remove Petitioner to Mexico, she must be provided with the procedural safeguards necessary to do so. Adopting the reasoning of *Cruz Medina II*, if Respondents do seek to remove her to a third country, including but not limited to Mexico, she is entitled to proper notice, a fear screening, and review of any negative determination by an immigration judge if requested. *Cruz Medina II*, 806 F. Supp. 3d. at 549. Unless and until each of those procedures is provided, including immigration judge review of a negative fear determination, she may not be removed.

**c. Impact of Ongoing *D.V.D.* Litigation**

In *D.V.D. v. Department of Homeland Security*, the District of Massachusetts issued a classwide declaratory judgment and vacatur of third-country removal policies, requiring the government to provide procedural protections for noncitizens beyond those outlined in the March 30, 2025 Guidance Memorandum. 821 F.Supp.3d 102 (D. Mass. 2026); ECF No. 17 at 2. This judgment was upheld by the First Circuit. *D.V.D. v. U.S. Dep't of Homeland Sec.*, --- F.4th ----, 2026 WL 2797801, at *6 (1st Cir. Sept. 18, 2026). The government challenged that decision and the Supreme Court stayed the lower court's order pending further review. *Dep't of Homeland Sec. v. D.V.D.*, --- S. Ct. ----, 2026 WL 2917860 (Mem). (Sept. 29, 2026).

Although the Supreme Court's stay of the *D.V.D.* judgment does impact Petitioner's ability to obtain classwide relief, the Supreme Court did not express any opinion on or discuss the merits of the case. *Id.* at *1. In granting the Stay, the Supreme Court requested that the parties brief and argue the following:

> (1) Whether the district court had jurisdiction over Respondents' claims.
>
> (2) Whether the district court had authority to enter classwide declaratory relief and APA vacatur under 8 U.S.C. § 1252(f)(1).
>
> (3) Whether the Government's Guidance on third-country removals is unlawful under 8 U.S.C. § 1231(b), the Due Process Clause, or FARRA/CAT and its implementing regulations.
>
> (4) Such other questions that the Government determines are appropriate for the proper disposition of the case.

*Id.*

Where the Supreme Court provides reasoning and analysis, lower courts must apply that analysis in reaching decisions and "may not defy the Supreme Court" by coming to an opposite conclusion. *See Am. Fed'n of State, Cnty. & Mun. Emps., AFL-CIO v. Soc. Sec. Admin.*, 172 F.4th 361, 381 (4th Cir. 2026) (Richardson, J., concurring). But where there is no reasoning or analysis given, there is little guidance to be gleaned from such silence. *See Nguyen v. Scott*, 796 F. Supp. 3d 703, 732 (W.D. Wash. 2025) ("This Court cannot ascertain from the Supreme Court's emergency order whether it found the government likely to succeed on its jurisdictional or substantive claims. This distinction is especially important in this case, where one of the government's primary arguments—that the *D.V.D.* court had no power to enter classwide injunctive relief—would have no bearing on the merits of individual habeas petitions.").

Although the Supreme Court's decision on the question regarding the Government's current guidance on third-country removals would directly control the outcome of this case, its decision on the jurisdiction and authority of the lower court over classwide relief would be inapplicable here. The questions posed by the Supreme

Court in granting the stay in *D.V.D.* correspond directly to the grounds brought by the government in requesting the stay, and do not clearly represent any determination on the likelihood of success of any particular ground. Application for a Stay at i, *Department of Homeland Security v. D.V.D.* (2026) (No. 26-246), 2026 WL 2884581, at *i. Instead, it seems that these questions represent a desire for further briefing on all legal issues presented by the government.

Here, there is a significant likelihood that the Supreme Court's grant of the government's stay application was based on a rationale that, even if the Supreme Court adopts it as a holding, will have no impact on the outcome of Petitioner's claim. "But abstaining from hearing [Petitioner's] challenge here 'would effectively preclude [her] from the relief [s]he seeks entirely and potentially foreclose any relief that [s]he could be entitled to as part of the *D.V.D.* class if [s]he is removed before the class-wide claims are resolved.'" *Portela-Hernandez v. Trump*, No. 25-1633-BAH, 2026 WL 74042, at *10 (D. Md. Jan. 9, 2026) (quoting *Sagastizado v. Noem*, 802 F. Supp. 3d 992, 1008 (S.D. Tex. 2025)). For these reasons, this Court will not deny Petitioner individual relief based on the stay in the *D.V.D.* class action.

## III. CONCLUSION

For the reasons explained above, the Court will grant the Petition for Writ of Habeas Corpus, ECF No. 1, and order that Petitioner remain released unless she is provided with proper process, as detailed above. A separate Order follows.

Date: November 4, 2026

/s/
Adam B. Abelson
United States District Judge